**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| CARNELL C. MORRIS | CIVIL ACTION NO. 21-0947 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE LEBLANC |

# MEMORANDUM RULING

The only defendant left, Corey Trahan ("Trahan"), filed a Motion to Dismiss, Record Document 51, arguing that the official capacity and individual capacity claims of the plaintiff, Carnell Morris ("Morris"), are either barred by sovereign immunity or qualified immunity. For the following reasons, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The official capacity claims asserted against Trahan are **DISMISSED WITH PREJUDICE**. The sole claim remaining is the individual capacity cause of action under 42 U.S.C. § 1983 against Trahan.

## Background

The procedural history of this case is well documented in the record. Presently before the Court is a Motion to Dismiss filed by the sole remaining defendant, Lt. Corey Trahan in response to the Complaint filed by Morris, in which he alleges that during an October 19, 2020, incident at the Allen Correctional Center, he was subjected to excessive force, including being rushed by Trahan, and others, and sprayed with Fox #5 chemical agent by Trahan. *See* Amended Complaint, Record Document 5 at 7-8; *see also* Opposition to Motion to Dismiss, Record Document 59 at

2. In response, Trahan filed the instant Motion to Dismiss, asserting that Morris's claims against him in his official capacity are barred by Eleventh Amendment sovereign immunity. Moreover, he argues that because Morris has not alleged sufficient facts to state a claim pursuant to 42 U.S.C. § 1983 against him in his individual capacity, he is entitled to qualified immunity.

Opposing the Motion to Dismiss, Morris does not respond to Trahan's sovereign immunity argument. Addressing the qualified immunity allegation, Morris asserts that his Complaint did, in fact, allege that Trahan participated in the incident by spraying him with a chemical agent and writing disciplinary reports on the incident. Most of Morris's arguments in response to Trahan's motion are contained in the document attached to Morris's opposition, titled "Exhibit A." *See* Record Document 59-1. Trahan, in his reply to the opposition, objects to Morris's attachment and asks the Court to exclude it from its analysis of the claims. Record Document 61.

**Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it. *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021). The party seeking to invoke subject matter jurisdiction has the burden to establish it. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). At the pleading stage, the plaintiff's burden is to allege "a plausible set of facts establishing jurisdiction." *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021).

On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true, and all reasonable inferences must be made in the plaintiff's favor. *Haverkamp v. Linthicum*, 6 F.4th 662, 668-69 (5th Cir. 2021). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted). A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted). However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'" *Taha v. William Marsh Rice Univ.,* 2012 U.S. Dist. LEXIS 62185, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc*., 365 F.3d 353, 361 (5th Cir. 2004)). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

**Analysis**

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 82 (1984); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19 (1981). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984). A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

## I. Official Capacity Claims

To the extent Morris brings claims against Trahan in his official capacity, the Eleventh Amendment deprives this court of jurisdiction over all such claims, and

those claims should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12 (b)(1). *Warnock v. Pecos County, Texas*, 88 F. 3d 341, 343 (5th Cir. 1996). The Eleventh Amendment, which codified the sovereign immunity of the states, provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Federal courts "may not entertain a private person's suit against a State," unless the State has waived its sovereign immunity or Congress has abrogated it by legislation. *Id.* at 253-54. Sovereign immunity acts as a jurisdictional bar and applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Sovereign immunity applies not only to actions when a state itself is the named defendant, but also when a state agency or instrumentality is the defendant. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Sovereign immunity also prohibits suits against state officials in their official capacity unless the exception established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). *Ex parte Young* applies to "a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996). When determining whether *Ex parte Young* applies, "a court

need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Stewart*, 563 U.S. at 255.

The State of Louisiana, Department of Public Safety and Corrections ("LaDOC"), has been found many times to be immune from suits under the Eleventh Amendment. See *Cyrio v. Hunt*, Slip Copy, 2007 WL 2772222 (E. D. La.,2007); *Harris v. Travis*, 55 Fed.Appx. 716 (5th Cir. 2002); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999); *Smith v. Johnson*, 2005 WL 1869037 (M.D. La. Jul 29, 2005) unreported; *Anderson v. Phelps*, 655 F.Supp. 560 (M.D. La. 1985); *Goins v. State of Louisiana*, 2004 WL 2694899 (E.D. La. Nov. 22, 2004) unreported; *Williams v. City of New Orleans*, 1999 WL 820553 (E.D. La. Oct 13, 1999) unreported; *Brown v. Day*, 1999 WL 1220762 (E.D. La. Dec 16, 1999) unreported; *Kentucky v. Graham*, 473 U.S. 159 (1985); *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); *Jenkins v. Lee*, 1999 WL 97931 (E.D. La. Feb. 17, 1999) unreported. Lawsuits against government officials acting in their official capacity are considered lawsuits brought against the entity of which they are agents. *See Kentucky v. Graham*, 105 S.Ct. 3099 (1985); *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); *Jenkins v. Lee*, 1999 WL 97931 (E.D. La. Feb. 17, 1999) unreported. In this instance, Trahan is being sued in his official capacity as an agent of LaDOC, an agency of the State of Louisiana.

The Court agrees with Trahan's contention that the State is unquestionably entitled to sovereign immunity and that he, too, is entitled to Eleventh Amendment sovereign immunity in his official capacity. Morris voiced no opposition to this

assertion. Accordingly, this Court lacks jurisdiction over Trahan in his official capacity, and Morris's Complaint against Trahan in his official capacity must be dismissed.

## II. Individual Capacity Claims

Trahan also asserts that Morris has not alleged sufficient facts to state a Section 1983 claim against him in his individual capacity that is plausible on its face, and thus, he is entitled to qualified immunity. He contends Morris failed to allege any individual conduct by him which violated Morris's constitutional rights and the actions alleged by Morris are respondeat superior allegations of liability or failure to train/supervise claims, neither of which is actionable under § 1983.

Qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). "Qualified immunity protects government officials from money damages unless a plaintiff shows: (1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012). A court may rely on either prong of the defense in its analysis. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

At the 12(b)(6) stage, for a plaintiff "[t]o state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead 'two—and only two—allegations .... First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Section 1983 claims implicating qualified immunity are subject to the same pleading requirements as all other claims, and "an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Id.* at 266-67 (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)); see also *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

**A. Constitutional Violations**

Morris alleges that Trahan used excessive force when he "took part in the incident in which the plaintiff now seeks relief." See Amended Complaint, Record Document 5 at 6. Specifically, he alleges in his Complaint that during an incident that took place in October 2020, Trahan came to his dorm and "gave Major M. Estes a can of Fox #5 chemical agent and kept a can in his own possession." *Id*. at 8. When Morris began to "yell out homicidal and suicidal," Estes, Trahan and several others "rushed the plaintiff and sprayed the plaintiff with two cans of gas at the same time overwhelming the plaintiff causing him to back away from them." *Id*. at 9. After he was wrestled to the floor and handcuffed, he was lifted off the floor by Trahan and

another officer and then "tossed to the other side of the dorm face first on a footlocker, then escorted to medical where he was treated for minor facial injuries." *Id*.

Trahan, seemingly ignoring the allegations in the Complaint noted above, argues that but for the allegations made in "Exhibit A" to Morris's opposition to the Motion to Dismiss, Morris failed to allege sufficient facts to show that his Eighth Amendment rights were violated. Record Document 61 at 2.

Convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force. See *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986); *see also Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006). However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The United States Fifth Circuit Court of Appeals recognizes that prison officials may violate an inmate's Eighth Amendment rights when they "use gratuitous force against a prisoner who has already been subdued," *Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (citation omitted), and has noted that "courts frequently [find] constitutional violations in cases where a restrained or subdued person is subjected to the use of force," *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016).

"In evaluating excessive force claims under the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cowart*, 837 F.3d at 452. The focus of this standard is "on the detention facility official's subjective intent to punish." *Id*. The prison official's subjective intent is determined by reference to the

Hudson factors, which are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See id.* at 452-53; *Hudson*, 503 U.S. at 7.

In his motion, Trahan argues Morris failed to state a claim for relief, as the Complaint is devoid of any facts supporting that he had knowledge, contact, or action against the plaintiff individually that would give rise to individual liability. In addition, Trahan contends that, while Morris states that he participated in the incident at issue by spraying Morris with a chemical agent and writing disciplinary reports on the incident, absent the information contained in "Exhibit A," to which Trahan objects, Morris has not addressed his argument that Morris has failed to state a claim of excessive force under the Eighth Amendment against Trahan.

At the 12(b)(6) stage, plaintiff need only allege facts that plausibly indicate that Trahan acted "maliciously and sadistically to cause harm." See *Cowart*, 837 F.3d at 452. Morris alleges that Trahan used excessive force when he "took part in the incident in which the plaintiff now seeks relief." Record Document 5 at 6. Specifically, he alleges in his Complaint that during the incident at the center of this litigation, Trahan came to his dorm and "gave Major M. Estes a can of Fox #5 chemical agent and kept a can in his own possession." *Id.* at 8. When plaintiff began to "yell out homicidal and suicidal," Estes, Trahan and several others "rushed the plaintiff and sprayed the plaintiff with two cans of gas at the same time overwhelming the plaintiff

causing him to back away from them." *Id.* at 9. After he was wrestled to the floor and handcuffed, he was lifted off the floor by Trahan and another officer and then "tossed to the other side of the dorm face first on a footlocker, then escorted to medical where he was treated for minor facial injuries." *Id.*

These allegations, accepted as true, plausibly state that Trahan's use of force was applied in a malicious and sadistic manner. See *Wingard v. La. through Dep't of Pub. Safety & Corrs.*, 594 F. Supp.3d 704, 726 (M.D. La. 2022) (concluding that an inmate states a "colorable claim of excessive force" when he is dragged and sprayed with a chemical agent while being restrained and fully compliant); see also *Hensley v. Thompson*, No. 18-877, 2022 WL 636049, at *4 (M.D. La. Feb. 11, 2022) (recognizing that officers "may not use chemical spray on an inmate without provocation or any reason for the use of the spray"), report and recommendation adopted, No. 18-877, 2022 U.S. Dist. LEXIS 37766, 2022 WL 628533 (M.D. La. Mar. 3, 2022).

In his Complaint, Morris alleges he was treated for minor facial injuries after the incident. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (cleaned up). "A plaintiff need not show significant injury, although the extent of the injury may supply insight as to the amount of force applied." *Cowart*, 837 F.3d at 453; *Wilkins*, 559 U.S. at 38 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."); *Hudson*, 503 U.S. at 9 ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an

excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks."). The Fifth Circuit previously determined that this Court erred in dismissing Morris's claims based on the Court's determination that Morris's claims were minor based on his allegation that he required treatment for his facial injuries and the officers involved immediately recognized the need to take him to the medical unit. See Record Document 42 (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999) (distinguishing cuts, scrapes, and contusions from the de minimis ear bruising in *Siglar v. Hightower*, 112 F.2d 191 (5th Cir. 1997), in part because the plaintiff had to receive medical treatment); *Edwards v. Stewart*, 37 F. App'x 90, 90 (5th Cir. 2002) (per curiam) (unpublished table decision) (holding the plaintiff's cuts to his fingers and thumb, headache, neck pain, and lacerations to the ear for which he received medical treatment were not de minimis)). Considering the use of force applied while Morris was restrained, as well as the alleged injury from the incident, Morris has pled sufficient facts to plausibly state a claim of excessive force against Trahan.

**B. Clearly Established Law**

Under the second prong of the qualified immunity analysis, the Court must determine whether the actions of Trahan were objectively reasonable under clearly established law. See *Harlow*, 457 U.S. at 818 (Qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "A Government official's conduct

violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To determine whether an official, such as a correctional officer, is entitled to qualified immunity, the court must ask whether it would have been "clear to a reasonable officer that the [alleged] conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Trahan provides no substantive discussion regarding the clearly-established prong as it applies to him. Instead, ignoring the allegations made in the Amended Complaint, Trahan asserts that "Plaintiff does not state a claim for a violation of a right secured to him under the United States Constitution due to the fact that there is no supervisory liability and no causal connexity between any action of either the Defendant and the Plaintiff, other than the Defendant's supervisory position at LSP." Record Document 51-1 at 8. Moreover, he contends that Morris makes only a bare conclusory allegation of liability which does not plead a violation of a clearly established right, but rather relies upon supervisory liability, which is improper." *Id*.

Denial of qualified immunity is appropriate where defendants offer conclusory assertions of qualified immunity "devoid of 'any analysis as to the elements of qualified immunity and how they specifically apply to Plaintiff's claims against them.'" *Justice v. Price*, No. 6:23-16, 2024 U.S. Dist. LEXIS 124342, 2024 WL 3408568, at *2 (E.D. Tex. July 15, 2024) (quoting *McNeely v. Woods*, No. 1:19-43, 2020

WL 13751583, at *7 (E.D. Tex. Mar. 23, 2020)); *see also Imani v. City of Baton Rouge*, 614 F. Supp.3d 306, 354 n.8 (M.D. La. 2022) (declining to determine whether right at issue was clearly established because defendants' qualified immunity assertion was conclusory and failed to elaborate upon relevant law). As such, Trahan has effectively waived any argument regarding his entitlement to qualified immunity under the second prong. *Polk v. Louisiana*, 2026 U.S. Dist. LEXIS 93544, 2026 WL 1130618, at *12 (W.D. La. Feb. 5, 2026).

Nevertheless, the Court finds the law was clearly established that a correctional officer's use of force in a malicious and sadistic fashion to cause harm constitutes excessive force in violation of the Eighth Amendment. See *Hudson*, 503 U.S. at 6-7. It is beyond dispute that in October 2020, the use of force against a restrained, non-threatening, non-resisting inmate amounted to a Constitutional violation. *Cowart*, 837 F.3d at 454-55 & nn. 28 & 32 ("We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not use gratuitous force against a prisoner who has already been subdued or incapacitated."). As such, even if Trahan did not waive his argument as to the second prong of the qualified immunity analysis, the Court finds that it has been met at this stage. *See also Brown v. Callahan*, 623 F.3d 249 (2010); *Wingard*, 594 F. Supp.3d 704, 726 (M.D. La. March 29, 2022) (concluding that an inmate states a "colorable claim of excessive force" when he is dragged and sprayed with a chemical agent while being restrained and fully compliant); *Fennell v. Quintela*, 393 F. App'x 150, 152, 155 (5th Cir. 2010) (finding

prisoner stated a cognizable claim for excessive force when he alleged an officer grabbed his handcuffed wrists and twisted them, resulting in injury); *Watts v. Smart*, 328 F. App'x 291, 292, 293-94 (5th Cir. 2009) (finding that prisoner alleging that defendants struck him without provocation while he was in restraints created genuine fact issues whether force applied was excessive).

This is not an obvious case in which the entitlement to qualified immunity can be determined without further development of the facts. *See Hatcher v. Bement*, No. 3:14-CV-432-M-BN, 2015 U.S. Dist. LEXIS 44074, 2015 WL 1511106, at *9 (N.D. Tex. Apr. 3, 2015). For the Court to determine the reasonableness of Trahan's actions, the Court must determine if his actions were reasonable in light of the circumstances, and "whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014). When significant fact questions remain as to both the plaintiff's and the defendant's knowledge, actions, and omissions, further development of the claims is required. *See Webb v. Livingston*, No. 6:13cv711, 2014 U.S. Dist. LEXIS 34081, 2014 WL 1049983, at *8 (E.D. Tex. Mar.14, 2014). Accordingly, Trahan is not entitled to qualified immunity at this time as to Morris's excessive force claim brought against him in his individual capacity.

## Conclusion

For the foregoing reasons, the Motion to Dismiss filed by the defendant, Corey Trahan, is **GRANTED IN PART** and **DENIED IN PART**. Record Document 51. The official capacity claims asserted against Trahan are **DISMISSED WITH**

**PREJUDICE**. The sole claim remaining is the individual capacity cause of action under 42 U.S.C. § 1983 against Trahan. An order consistent with this memorandum ruling will be issued.

**DONE AND SIGNED** at Shreveport, Louisiana, this 30th day of September, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE